STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. THE
PENNSYLVANIA RAILROAD COMPANY, DEFENDANT-
RESPONDENT.

Argued March 10, 1952—Decided March 31, 1952.

*Mr. John B. Molineux* argued the cause for appellant (*Mr. Alex Eber*, Prosecutor, Middlesex County, attorney).

*Mr. John E. Toolan* argued the cause for respondent (*Messrs. Toolan, Haney & Romond*, attorneys).

The opinion of the court was delivered by

WACHENFELD, J. Eighty-four lives were lost in an unusually disastrous accident when a railroad train operated by the defendant was hurled from a trestle over which it was traveling in Middlesex County. The grand jury investigation resulted in 84 separate indictments being returned against the defendant, each for the crime of manslaughter, each charging the defendant "did feloniously kill and slay" one of the persons killed in the accident.

The State, through the prosecutor, in the County Court moved to consolidate all the indictments, asking they be tried together and at one time, relying on *Rule* 2:5–4. The defendant railroad objected to the relief so sought on the ground, amongst others, that there was but a single offense, if any, committed by the defendant and there could be a trial only on one charge of involuntary manslaughter.

The 84 indictments, it is conceded, arose out of the same transaction and the same facts would be submitted as evidence to prove each offense. The motion for consolidation was granted.

The defendant appealed under *Rule* 4:2–2(*a*) (4) and petitioned for leave to appeal under *Rules* 4:2–3 and 4:5.

Consent was given by the State and the Appellate Division granted the application for permission to appeal.

The order of consolidation was reversed by the Appellate Division, holding *Rule* 2 :5–4, under which the order was made, "applies only when 'offenses' are charged in separate indictments, and the only indictments which may be consolidated for trial under this rule are those which charge distinct and separate offenses which could have been joined in a single indictment. Since the indictments which were consolidated under the order under appeal really charge only a single criminal offense, the trial court lacked power to grant the motion of the State."

This appeal is taken from the judgment of reversal, the State claiming it is in the public interest to secure a final determination as to the number of offenses involved in the Woodbridge wreck before proceeding further.

The question presented is: where a single act of the defendant results in the death of two or more persons under circumstances which would justify a conviction for manslaughter, has the offense of manslaughter been committed as many times as the number of persons killed?

Basically the inquiry also involves the principle and applicability of the plea of *autrefois acquit* and *autrefois convict*.

The railroad asserts unless the Appellate Division is upheld, it "will be deprived of a vital constitutional and basic right—because the multiple indictments in this case do not really charge multiple offenses of manslaughter but merely multiple consequences of a single such offense."

The State, on the contrary, argues where a single act of the defendant results in the death of two or more persons under circumstances which would justify a conviction for manslaughter, the offense of manslaughter has been committed as many times as the number of persons so killed. It is said the Constitution and the common law have in view criminal offenses and not the act itself which resulted in the offenses. The insistment is that 84 crimes were committed in the

doing of one act and that these are distinct criminal offenses which may be prosecuted and punished severally.

Article I, par. 11, of the 1947 Constitution of our State provides in part: "No person shall, after acquittal, be tried for the same offense * * *."

Our Supreme Court, referring to this doctrine in *State v. Cooper*, 13 *N. J. L*. 361 (*Sup. Ct*. 1833), said:

> "Our courts of justice would have recognized it, and acted upon it, as one of the most valuable principles of the common law, without any constitutional provision. But the framers of our Constitution have thought it worthy of especial notice. And all who are conversant with courts of justice, and the proceedings in them, must be satisfied that this great principle forms one of the strong bulwarks of liberty; and that if it be prostrated, every citizen would become liable, if guilty of an offense, to the unnecessary costs and vexations of repeated prosecutions, and if innocent, not only to those, but to the danger of an erroneous conviction from repeated trials."

Recently in *State v. Labato*, 7 *N. J*. 137 (1951), we expressed ourselves on this topic thusly:

> "It is an ancient principle of the common law that one may not be twice put in jeopardy for the same offense. This is one of the limitations upon arbitrary power confirmed by King John's Magna Charta of 1215, in the provision (*c*. 29) ensuring the essentials of individual right and justice and the ancient liberties of the free man against interference 'but by lawful judgment of his peers, or by the law of the land.' Immunity from repeated jeopardy was one of the cherished basic liberties of the early common law comprehended in this guaranty of the Great Charter. *State v. DiGiosia*, 3 *N. J*. 413 (1950). The constitutional and common-law protection is not only against the peril of a second punishment, but also against a second prosecution and trial for the same offense."

The principle so enunciated is strongly entrenched in the very foundation of our legal structure both by the Constitution and the common law. The complete identity of the evidence is covered by the stipulation admitting "that the same facts would be put in evidence to prove each offense." It is apparent, we think, that if the 84 indictments were to be moved and tried together, the defendant would be deprived

of its right to enter a plea of *autrefois acquit* or *convict*, whichever was apropos.

The rule in the various states differs sharply as to whether a single act resulting in the death of two or more persons may constitute one crime or offense or a number of crimes or offenses equal to the number of deaths. There are many decisions, among them *People v. Allen, 368 Ill.* 368, 14 *N. E. 2d.*397 (*Sup. Ct.* 1938), and *State v. Martin,* 154 *Ohio State* 539, 96 *N. E. 2d* 776 (*Sup. Ct.* 1951), holding the number of crimes or offenses in manslaughter is equal to the number of deaths. Similar rulings exist in other states.

The contrary view is firmly held in *Slate v. Wheelock,* 216 *Iowa* 1428, 250 *N. W.* 617 (*Sup. Ct.* 1933); *People v. Barr,* 259 *N. Y.* 104, 181 *N. E.* 64 (*Ct. App.* 1932); *Commonwealth v. Ernesto,* 93 *Pa. Super.* 339 (*Super. Ct.* 1928), and other jurisdictions.

The reasoning between these two schools of thought clashes almost as violently as the conflicting results, and the basic theories relied upon seem irreconcilable. Which school prevails in *quantum* or in logic is difficult of ascertainment. It is conceded, however, that the number of crimes or offenses in this jurisdiction is not decided by the number of deaths. So it has been determined in *State v. Cosgrove,* 103 *N. J. L.* 412 (*E. & A.* 1927), and the prosecution frankly admits a reversal of the Appellate Division would in effect be an overruling of the *Cosgrove* case, *supra.* It insists, however, that in the realm of common sense and liberal administration of justice and the enforcement of the law, the doctrine enunciated in the *Cosgrove* case should be re-examined and reversed or overruled, contending: "Here we do not deal with the niceties of technical legal doctrines but with the broad questions of elemental justice."

Such a request for a re-evaluation of a prevailing rule, under the circumstances here presented, should be readily complied with, and we have therefore carefully studied the conflicting authorities, the reasoning and the logic of each and the results emanating therefrom. The study is not novel

as the controversy has been extensively commented upon by many courts and authorities and has been the topic of discussion in numerous law reviews. See 172 *A. L. R.* 1062; 22 *C. J. S., Criminal Law,* 278, *et seq.*

In this jurisdiction the doctrine of the *Cosgrove* case has stood for 25 years without substantial or serious challenge and it finds support in other New Jersey adjudications which have been recognized as landmarks for a long time: *State v. Cooper, supra; State v. Rosa,* 72 *N. J. L.* 462 (*E. & A.* 1905); *State v. Mowser,* 92 *N. J. L.* 474 (*E. & A.* 1919). It is cited and inferentially approved in *State v. Labato, supra.* The *Cooper* case, *supra,* held:

"Some act of *commission* or *omission* lies at the foundation of every crime. And that a simple consequence of an act should be severed, from the act itself, and possess independently all the necessary ingredients of crime, is a violation of sound philosophy, and, as I think, of law."

In *State v. Rosa, supra,* the court said:

"In *State v. Cooper,* [1 *J. S. Green* 361, 371] 13 *N. J. L.* 361, 371, a case of note in our reports upon this subject, it is said: 'The writ-. ers concur in stating that these pleas "must be upon a prosecution *for the same, identical act."* ' And, although that case was decided over 70 years ago, an examination of the textbooks and of the later decisions bearing upon this point will disclose no change or modification of this rule."

In *State v. Mowser, supra,* the ruling in the *Cooper* and *Rosa* cases was re-affirmed, the court holding where both crimes were the product of the same, identical act and there was a conviction or acquittal of one under the indictment for the alleged crime, a plea of *autrefois acquit* or *autrefois convict,* as the case may be, is a good bar to the trial of the other indictment.

In *State v. Cosgrove, supra,* the court, calling attention to the cases already cited, said:

"The case of *State v. Cooper, supra,* decided in 1833, because of the impregnable soundness of the doctrine there laid down, relating

to the subject-matter under review here, has been repeatedly cited with approval not only by the courts of this state but also by the courts of sister states. A phase of the doctrine of the cited case, akin to the question *sub judice*, received attention and consideration in *State v. Rosa, supra,* where this court held that a plea of *autrefois acquit* was bad, unless it appeared that the same act produced both results which were the subject-matter of the two indictments, both being indictments for murder."

The principle espoused by these cases has stood for over 100 years. Mere antiquity, however, will not save it from the onslaughts being made if it is otherwise barren of reason or logic, equity or justice. Time alone will not suffice to cause its re-embracement. On the other hand, a firmly fixed and well settled rule should not be changed unless it is proved erroneous or, under present-day conditions, no longer sustains the basic principles of law and justice which originally evoked it.

Admittedly the rule is not universally accepted, but no new thought or reason is advanced to shake our adherence to a doctrine which has long prevailed here, was affirmed in our old and new Constitutions and is deeply imbedded in our jurisprudence and bottomed in the common law.

The primary cause for the present effort, made plain on the argument, is the attempt to change or circumvent what is deemed by the State to be inadequate punishment under the unusual circumstances present. The defendant, being a corporation, cannot be incarcerated and in the event of conviction the maximum penalty would be only $1,000. An individual indicted and convicted on the same charge would be liable to imprisonment up to ten years in addition to the fine.

Our attention is called, for obvious reasons, to the fact that the amount fixed as punishment was set by the Legislature as early as 1829, yet the State nullifies its own suggestion by admitting in its brief the impropriety of our taking cognizance of it, saying: "While it is true that the law should be determined by this court without consideration being given to the punishment * * *."

If the punishment, as then suggested, be "a mockery of and a travesty on justice," the forum for its change has been incorrectly chosen. The remedy lies in a legislative mandate and not by judicial addition or interpretation. "If the whole offense in the eye of reason and philosophy is one * * * we ought not to presume that the legislature meant to punish it as two." *State v. Cooper, supra.*

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD and BURLING—5.

*For reversal*—None.