223 N.J. Super. 145 (1988)
538 A.2d 399
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JULIUS C. LEWIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 19, 1988.
Decided February 24, 1988.
*146 Before Judges PETRELLA, DREIER and ASHBEY.
Alfred A. Slocum, Public Defender, attorney for appellant (Lowell Espey, Designated Counsel, of counsel and on the brief).
W. Cary Edwards, Attorney General, attorney for respondent (Julie Davidson, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by ASHBEY, J.A.D.
Defendant was charged with the purposeful or knowing murder of Leroy Palmer in violation of N.J.S.A. 2C:11-3a(1) and (2); causing the death of Leroy Palmer in the course of committing arson in violation of N.J.S.A. 2C:11-3a(3); committing aggravated arson in violation of N.J.S.A. 2C:17-1a; six counts *147 of aggravated assault in violation of N.J.S.A. 2C:12-1b(1), and second degree burglary in violation of N.J.S.A. 2C:18-2. He was tried to a jury and found guilty of first degree aggravated manslaughter, second degree aggravated arson, six counts of second degree aggravated assault and one count of second degree burglary. At sentencing defendant moved to merge the convictions for aggravated arson, aggravated assault and the burglary into the aggravated manslaughter conviction. The motion was denied, and defendant was sentenced for aggravated manslaughter to a term of 20 years with 10 years of parole ineligibility; for aggravated arson, 10 years with 5 years of parole ineligibility, to be served consecutively to the manslaughter conviction; for two counts of aggravated assault, to a term of 10 years with 5 years of parole ineligibility each, to be served consecutively to the manslaughter and the arson conviction and to each other; for four counts of aggravated assault, to a 10 year prison term, and for burglary, to a 10 year prison term. These latter sentences were to be served concurrently with each other and with the other sentences. Defendant's aggregate sentence was 50 years, 25 of which must be served before parole eligibility.
On appeal from the judgment of conviction defendant contends,
Point I
The death qualification of the guilt phase jury denied him his right to a fair and impartial jury.
Point II
The trial court erred in instructing the jury on the burden of proof in passion/provocation manslaughter.
Point III
The trial court committed plain error when instructing the jury that they must conclude that defendant was not guilty of the greater offenses before considering any lesser included offenses (not raised below).
Point IV
The trial court should have merged the burglary, aggravated assault and aggravated arson convictions with the conviction for aggravated manslaughter.
Point V
The trial court misapplied the standards of State v. Yarbough when imposing consecutive sentences.
*148 At trial the State's proofs established that a fire was deliberately set in the only stairway leading to the second floor apartment of a two-family house at 150-152 Ferry Street in Trenton. At the time, six adults and one child were inside: resident Diane Palmer, resident Kenneth Davis, Diane Palmer's four-year-old son Leroy Palmer, resident Madeline McNeil, resident Andrew Johnson, and visitors Evelyn Little and Robert Ray. The fire killed Leroy Palmer and caused varying degrees of injuries to the six adults as they jumped out of second floor windows to escape. Leroy Palmer died of asphyxia. Kenneth Davis sustained burns to his arms, ears and neck; Diane Palmer sustained burns to her arms, broke her left arm and scratched her face; Andrew Johnson broke his wrist and sustained burns; Madeline McNeil had 172 stitches in her scalp, sustained burns and was hospitalized for 31 days; Robert Ray sustained a minor knee injury, and Evelyn Little fractured both heels, cut her wrist and suffered a compressed spine.
The State's evidence connecting defendant to the fire setting was overwhelming. The fire occurred at 5:45 p.m. Defendant had quarreled with one John Henry Ross in the morning of that day and again that afternoon. After the last fight, Ross had walked towards the apartment building and defendant told Ross, "if you go in the house I'll blow the damn thing up."[1] Defendant told a witness later that day, "I'm going to mind my business, but I'm going to get him back." Leonard Cook and Herlene Montgomery were right outside of the apartment house at the time of the explosion. Both saw someone get "blown out the back door." Montgomery identified this person as defendant. Another witness, Arnold Parkman, testified that when Parkman told defendant that two children had died, defendant put his head down and said, "damn, I set that, I'm going to get Johnny Ross."
*149 Betty Jean Rowe testified that the next morning she asked defendant why he threw the fire bomb. Defendant responded, "I threw it and I meant to kill everyone in the house." When told that a boy had died, defendant responded, "I don't care, I meant to kill everyone in the house." Defendant told her that he had been "double-teamed" by Ross and his boys. Defendant told Rowe that he poured gasoline into a bottle, put a rag in it and threw the bottle in the house. Defendant's sweatshirt, socks and wool cap all tested positive for gasoline, which was also found in samples taken from the scene of the fire.
In his defense defendant proffered evidence that kerosene could have accounted for the fire, that Johnson had gasoline and that Johnson and Davis had been using kerosene for lighting in the apartment.
On appeal defendant first contends that death qualification of his jury violated his right to a fair and impartial jury guaranteed under Art. I, pars. 9 and 10 of the State Constitution. We find this assertion entirely without merit. See State v. Ramseur, 106 N.J. 123, 251 (1987).
Defendant also challenges the pattern of the judge's jury instructions.[2] The judge stated,
Now, if you find the defendant guilty of murder and/or felony murder, go no further as far as Counts 1 and 2 are concerned. However, if you have found the defendant not guilty of murder and felony murder, you must consider the lesser included offense of aggravated manslaughter.
* * * * * * * *
Now, if you find the defendant guilty of aggravated manslaughter, go no further as far as Counts 1 and 2 are concerned. However, if you find the defendant not guilty of aggravated manslaughter, you must consider the lesser included offenses of reckless manslaughter and a knowing or purposeful killing committed in the heat of passion resulting from a reasonable provocation.
Defendant asserts that these instructions unfairly focused the jury's deliberations upon the greater offense of murder. *150 We reject this contention, noting that defendant was not found guilty of murder.
We have elsewhere stated that, "[w]here one offense is a lesser included offense, ... the jury should be instructed not to return a verdict on the lesser offense if it finds the defendant guilty of the greater one." State v. McAllister, 211 N.J. Super. 355, 365 (App.Div. 1986). See also United States v. Tsanas, 572 F.2d 340, 344 (2d Cir.1978) cert. den. 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978); United States v. Butler, 455 F.2d 1338, 1340 (D.C. Cir.1971). See Model Jury Charge (Criminal), sec. 2.223 (1979). Defendant's reliance on State v. Simon, 79 N.J. 191 (1979) is misplaced. Such a pattern of instruction does not concern "special interrogatories."
Defendant also challenges one part of the jury charge. Defendant consented that the trial judge should charge the jury concerning passion/provocation manslaughter, N.J.S.A. 2C:11-4b(2). The judge told the jury,
If you are not satisfied beyond a reasonable doubt that the defendant did, in fact, cause the death of the victim or serious bodily injury resulting in the death, or that the defendant purposely or knowingly while in the heat of passion resulting from a reasonable provocation, then you must find the defendant not guilty. If you are convinced beyond a reasonable doubt that the defendant purposely or knowingly caused the death of the victim or serious bodily injury resulting in death while in the heat of passion resulting from a reasonable provocation, then you must find the defendant guilty of manslaughter.
Defendant objected to this language under N.J.S.A. 2C:1-13, arguing that once the issue of passion and provocation is raised, the State has the burden to disprove their existence beyond a reasonable doubt. On appeal the State does not dispute defendant's assertion that the charge was improper (State v. Grunow, 102 N.J. 133, 145 (1986)). It urges that the error was harmless, however, because (1) there was no rational basis to support the charge and (2) the legal issue was never addressed because the jury found defendant guilty of aggravated manslaughter.
We first agree with the State that the charge was not warranted and that there was no rational basis to support its presentation to the jury concerning a lesser included offense. *151 N.J.S.A. 2C:1-8e; State v. Crisantos (Arriagas), 102 N.J. 265, 276 (1986); State v. Bohannan, 206 N.J. Super. 646, 649 (App. Div. 1986). Even if one accepts mutual combat as a predicate to defendant's actions, the firebombing did not occur precipitately. Hours elapsed between the fight and the killing, during which defendant created an incendiary device, talked to people and returned to the scene. See State v. Ramirez, 116 Ariz. 259, 569 P.2d 201 (1977). Moreover, as the State urges, the killing of innocent bystanders does not qualify as a homicide incited by provocation. A reasonable person "would never be so greatly provoked as to strike out in blind anger at an innocent person." W. LaFave and A. Scott, 2 Substantive Criminal Law, sec. 7.10 at 269 (1986).
Having concluded therefore that the charge should not have been given, the question is whether the erroneous instructions were material to the jurors' deliberations and thus reversible error. Grunow, supra, 102 N.J. at 148. Not all superfluous instructions are harmful (see Arriagas, supra, 102 N.J. at 269 n. 6). As noted, the jury was instructed to proceed chronologically, beginning with purposeful murder. If it found defendant guilty of murder, the jury was told to stop and to go no further. Otherwise it would proceed in descending order of culpability. Thus, the State argues that, because defendant was found guilty of aggravated manslaughter, the jury was never confused by the error in the charge concerning passion and provocation. We agree. Given the pattern of instruction and the overwhelming evidence, we conclude that the error was harmless beyond a reasonable doubt. See ibid.; Grunow, supra, 102 N.J. at 122-123.
Defendant also urges that he was guilty only of the crime of aggravated manslaughter and that all of the other crimes merged with that conviction. See State v. Miller, 108 N.J. 112, 116 (1987), quoting State v. Davis, 68 N.J. 69, 77 (1975). We first reject this contention under N.J.S.A. 2C:1-8 which incorporates the standard for merger that the proofs of facts necessary to establish elements of the crimes must not *152 differ. The elements of aggravated manslaughter (N.J.S.A. 2C:11-4a) are that defendant recklessly cause death under circumstances manifesting extreme indifference to human life. Aggravated arson (N.J.S.A. 2C:17-1a(1)) on the other hand requires that defendant start a fire or explosion to property, thereby purposely or knowingly placing another in danger of death or bodily injury.[3] The record supports a finding that defendant was found guilty of the separate crimes of manslaughter and arson. The death of Leroy Palmer was caused by his reckless indifference to the child's life when he set the fire which cut off all avenues of escape, but he firebombed the entire property purposely to injure Ross. Moreover, the aggravated assaults (N.J.S.A. 2C:12-1b(1)) do not merge with aggravated manslaughter or each other because different victims were involved. Cf. State v. Carlos, 187 N.J. Super. 406, 409-410 (App.Div. 1982). Nor do the assaults merge with the aggravated arson for the reasons previously stated concerning aggravated manslaughter. We do not rely entirely on the difference in the elements of the criminal conduct and the different consequences of each crime. We are satisfied that the legislature designated fire setting separately from other forms of assaultive conduct, with a "specific intent to fractionalize the offense." State v. Miller, supra, 108 N.J. at 119, quoting State v. Mirault, 92 N.J. 492, 506 (1983). The arson was complete as soon as the fire was "started." N.J.S.A. 2C:17-1. See also State v. Schenk, 100 N.J. Super. 122, 126 (App.Div. 1968). The Criminal Law Revision Commissioners originally recommended that the arson statute not grade the offense according to its danger to persons because "[t]o make any dangerous burning a crime of the second degree would be inconsistent with Sections 2C:12-1...." relating to assault. The legislature's refusal to adopt this recommendation is indicative of its intent to punish arson separately based upon the risk *153 that fire presents. Final Report, Vol. II at 205, sec. 2C:17-1. See also Senate Judiciary Committee statement to Senate No. 738, May 15, 1978. Finally, burglary did not merge with the other offenses. That crime was completed upon entry. See State v. Pyron, 202 N.J. Super. 502, 504 (App.Div. 1985). State v. Ramos, 217 N.J. Super. 530 (App.Div. 1987) is inapposite. The burglary in that case was an element which raised the degree of the other crime of which defendant was convicted.
Defendant also claims that the aggregate sentence imposed, 50 years imprisonment with 25 years of parole ineligibility, exceeded the guidelines of State v. Yarbough, 100 N.J. 627, 643-644 (1985) cert. den. 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986), because the total sentence is greater than the sum of the longest terms allowable for the two most serious offenses, which would be 30 years.[4] (see N.J.S.A. 2C:43-6). Defendant asserts that there was nothing "extreme and extraordinary" about his crime to justify this deviation. See Yarbough, supra, 100 N.J. at 647.
The court gave four reasons for the length of sentence in excess of Yarbough, (1) that there can be no free crimes, (2) that there were multiple victims, (3) that it would be giving a "green light to kill, burn, maime and burglarize" if defendant were only to be sentenced for two offenses and (4) that the aggravating factors far outweighed the mitigating factors, i.e. (1) the especially heinous, cruel or depraved manner in which the manslaughter was committed, "it's hard to imagine a more painful, dreadful way to die" (N.J.S.A. 2C:44-1a(1)); (2) the gravity of the harm inflicted on the other victims, who were obliged to choose between certain death and certain injury (N.J.S.A. 2C:44-1a(2)); (3) the risk that defendant would commit other offenses, considering defendant's admitted life of crime, although defendant had no prior indictable offenses (N.J.S.A. 2C:44-1a(3)); (4) the substantial likelihood that defendant was *154 involved in organized criminal activity (N.J.S.A. 2C:44-1a(5));[5] (5) the extent of defendant's record of offenses (N.J.S.A. 2C:44-1a(6)), and (6) the need to deter defendant (N.J.S.A. 2C:44-1a(9)). The judge found no mitigating factors.
Our review of the record persuades us that the imposition of consecutive terms was within the court's discretion. State v. Marks, 201 N.J. Super. 514, 537 (App.Div. 1985). See State v. Mosch, 214 N.J. Super. 457, 465 (App.Div. 1986) certif. den. 107 N.J. 131 (1987). Defendant received concurrent sentences on five out of the nine convictions. See State v. Day, 216 N.J. Super. 33, 38 (App.Div. 1987) certif. den. 107 N.J. 640 (1987). As the court said in Yarbough, "We recognize that even within the general parameters that we have announced there are cases so extreme and so extraordinary that deviation from the guidelines may be called for." State v. Yarbough, supra, 100 N.J. at 647.
Affirmed.
NOTES
[1] Ross did go to the apartment at approximately 2:00 p.m., but stayed only a few minutes.
[2] Defendant's points II and III are intertwined. We discuss them in reverse order.
[3] Defendant was acquitted of purposeful or knowing murder as well as of felony murder.
[4] Today the maximum sentence for the two most serious offenses would be 40 years (see N.J.S.A. 2C:11-4).
[5] The pre-sentence investigation report states that defendant was the "overseer" for gambling in the area and that Ross was trying to "take over." Defendant did not deny this assertion at sentencing.