237 N.J. Super. 407 (1989)
568 A.2d 100
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WALTER LEE CRAIG, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 1, 1989.
Decided December 20, 1989.
*409 Before Judges GAULKIN, DREIER and SCALERA.
Alfred A. Slocum, Public Defender, attorney for appellant (Thomas C. Miller, Designated Counsel, of counsel and on the brief).
Peter N. Perretti, Jr., Attorney General, attorney for respondent (Michael J. Williams, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by SCALERA, J.A.D.
Defendant was indicted for seven counts of felony murder in violation of N.J.S.A. 2C:11-3a(3), and one count of aggravated arson in violation of 2C:17-1a(1) & (2). A jury acquitted him of the felony murders and aggravated arson, but convicted him of seven counts of the lesser-included offenses of manslaughter (N.J.S.A. 2C:11-4b.(2)) and one count of arson (N.J.S.A. 2C:17-1b). He was sentenced to consecutive ten-year terms of imprisonment with five-year periods of parole ineligibility on three of the second-degree manslaughter convictions, concurrent ten-year terms with five-year periods of parole ineligibility on the four remaining manslaughter convictions, and a four-year concurrent term on the third-degree arson. The resultant aggregate sentence was thirty years of imprisonment with a fifteen year parole ineligibility period. In addition, a total Violent Crimes Compensation Board penalty of $17,525 was imposed. Defendant's post-trial motion to merge the seven manslaughter convictions in accordance with State v. Mills, 51 N.J. 277 (1968), cert. den., 393 U.S. 832, 89 S.Ct. 105, 21 L.Ed.2d 104 (1968), was denied.
*410 The operative facts are relatively undisputed. Around 1:20 on the morning of May 22, 1985 a fire destroyed a three-story apartment building in Englewood, killing seven people. Although defendant initially denied any involvement, he ultimately confessed to starting the fire to attract the attention of his girlfriend who lived there and who had announced her intention to terminate their relationship.
The investigation which led to defendant's arrest was headed by Robert Kops, an arson investigator with the Bergen County Prosecutor's office, with the assistance of Walter Vreeland, a member of the prosecutor's office Homicide Squad, and Detective Ernest Cunningham of the Englewood Police Department.
The decision to interview defendant came about as a result of statements made by one Marlon Rollins, who had recently renewed a previous relationship with defendant's girlfriend. Defendant, who was eighteen years old, lived at his grandfather's house about a mile from the scene of the fire. Kops and Cunningham arrived at defendant's home at about 7:45 a.m., at which time they still did not know whether the fire had been intentionally set. Defendant was informed that there had been a fire and agreed to accompany the officers to Police Headquarters to be interviewed. He was not handcuffed and was not given any Miranda[1] warnings because the police did not know whether any arson had occurred. During the initial interview at headquarters, defendant was not under arrest and the door to the room was open. Also, at no time during this interview did defendant request to see an attorney or ask for anything to eat or drink. He appeared to be alert and coherent.
Defendant then described to the police his relationship with his girlfriend, Linda Hyman, and recounted his activities on the day before the fire. During this interview Kops did not ask defendant whether he had started the fire because the police were merely gathering information. Defendant and the other *411 persons being interviewed eventually agreed to go to the prosecutor's office to give statements that could be stenographically transcribed. Around 10:15 a.m., Kops was standing outside of the arson room in the prosecutor's office when one of the persons being interviewed, Earl Bryant, asked for directions to the men's room. On the way, Bryant stopped to talk to defendant. Kops overheard parts of their conversation in which Bryant mentioned the phrase, "Molotov cocktail." At this time, Kops concluded that the fire had been intentionally started but he did not know how or by whom. He immediately went over and told both men to terminate their conversation. He then asked defendant to accompany him into the arson unit room, where he advised defendant of his Miranda rights. After receiving those warnings, defendant voluntarily made another statement which was still essentially exculpatory.
Finally, defendant agreed to submit to a polygraph examination. Two such tests were administered to defendant during which he gave misleading statements in critical areas. When confronted with this, he finally admitted that he had started the fire by lighting a brown paper bag on the porch of the residence. Kops and Vreeland then informed defendant that he was going to be charged with arson and seven counts of murder. He was again advised of his Miranda rights after which he gave a formal confession in the presence of a court stenographer.
The trial judge conducted a pretrial Evid.R. 8 hearing pursuant to defendant's motion to suppress his inculpatory statements. Defendant's testimony suggested that he gave the inculpatory statements only because of police coercion occasioned by his forced presence at headquarters. In a thorough oral opinion, the trial judge found as a fact that defendant was not subjected to any custodial interrogation until after Kops overheard the brief conversation between defendant and Bryant, with its reference to a Molotov cocktail. The judge further found that defendant never asked for an attorney or invoked his right to remain silent and that the inculpatory *412 statements were made by defendant "to the investigating officers after he was advised of his Miranda rights [and] were voluntary and admissible."
At trial, defendant admitted to setting the fire but explained that he did so only because he was extremely upset. His girlfriend had told him that she was having intimate relations with Rollins and that, if the baby she was going to have were Rollins' she would have it, but if it were defendant's she would have an abortion. Defendant also produced the testimony of a psychiatrist, who testified that defendant had long been emotionally disturbed and that, in his opinion, defendant had acted impulsively and showed "poor judgment" in setting the fire. Judging from its manslaughter rather than murder convictions, the jury apparently accepted that explanation.
On this appeal defendant argues three issues:
I. THE TRIAL COURT ERRED IN DENYING DEFENDANTS MOTION TO SUPPRESS ALL DEFENDANT'S INCULPATORY STATEMENTS.
II. THE TRIAL COURT ERRED IN FAILING TO MERGE THE SEVEN MANSLAUGHTER CONVICTIONS INTO A SINGLE MANSLAUGHTER CONVICTION.
III. THE SENTENCE WAS EXCESSIVE BECAUSE (1) THE TRIAL JUDGE IMPOSED MAXIMUM TERMS WITH MAXIMUM PERIODS OF PAROLE INELIGIBILITY AND (2) HE MADE THE SENTENCES OF THREE OF THE EIGHT COUNTS CONSECUTIVE.

I.
Defendant contends that his statements should have been suppressed because they were the product of an illegal arrest that occurred when the police officers escorted defendant from his home to the police station.
There is no merit to that contention. The test for determining whether defendant was arrested is that of the objective reasonable person. That is, considering all of the surrounding circumstances, would a reasonable person conclude that he is not free to leave. See, State v. Davis, 104 N.J. 490, 498 (1986); State v. Pierson, 223 N.J. Super. 62, 67 (App.Div. *413 1988); State v. Coburn, 221 N.J. Super. 586, 596 (App.Div. 1987), certif. denied, 110 N.J. 300 (1988); State v. Godfrey, 131 N.J. Super. 168, 176, n. 1 (App.Div. 1979), aff'd, 67 N.J. 267 (1975). See, Florida v. Royer, 460 U.S. 491, 502, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). See also 2 LaFave, Search and Seizure (2 ed. 1987), § 5.1(a) at 388.
Those are largely factual determinations, subject to the sufficient credible evidence standard, although we are free to make new findings where they are intertwined with legal determinations. State v. Micheliche, 220 N.J. Super. 532, 537 (App.Div. 1987); Godfrey, supra, 131 N.J. Super. at 174-175. The trial judge's findings here are amply supported by credible evidence, State v. Johnson, 42 N.J. 146, 162 (1964), and defendant offers no persuasive reasons for setting aside those determinations.

II.
The primary issue is whether the seven manslaughter convictions should be merged into one manslaughter conviction in obedience to State v. Mills, supra. In that case our Supreme Court held that one arson, even though it resulted in multiple deaths, justified only one felony murder conviction and sentence. The trial judge determined that Mills is no longer controlling but has been superseded by the New Jersey Code of Criminal Justice. We agree.
In Mills defendant lit one fire in one house which resulted in three deaths. He was convicted of three counts of felony murder for which he was sentenced to three life terms. 51 N.J. at 279. The Supreme Court held that only one sentence and one conviction was proper irrespective of whether one applied the "single transaction" or the "same evidence" test. Id., at 289-290. The Court found it unnecessary to decide which test should apply:
We need not be here concerned with which is the correct test if indeed one may speak of a "correct test" at all, see State v. Currie, 41 N.J. 531, pp. 537-9 *414 (1964) since obviously the three deaths here resulted from but one criminal transaction  i.e., one act of arson  and the proof necessary to convict defendant of one of the homicides would not vary from that needed to convict on either of the other two. The imposition of three sentences  even though to run concurrently  is therefore improper. See State v. Pennsylvania R.R. Co., supra, 9 N.J. [194] at 194. [Id. at 289].
It is axiomatic that we are bound to accept propositions of law squarely decided by our Supreme Court, even if we are inclined to disagree. State v. Dolton, 146 N.J. Super. 111, 114-115 (App.Div. 1977), certif. den., 74 N.J. 252 (1977); In re Education Association of Passaic, Inc., 117 N.J. Super. 255, 261 (App.Div. 1971), certif. den., 60 N.J. 198 (1972). However, that principle does not apply when "more recent decisions of the Supreme Court plainly undermine the authority of a prior decision although not squarely and explicitly overruling it." State v. Ciuffini, 164 N.J. Super. 145, 152 (App.Div. 1978). Although Mills did not label its result as a "merger," that was obviously the basis for its result. Since Mills was decided, there has been an abundance of case law by our Supreme Court on the issue of merger of offenses, both pre-Code, see e.g. State v. Best, 70 N.J. 56 (1976); State v. Davis, 68 N.J. 69 (1975), and post-Code, see e.g., State v. Miller, 108 N.J. 112 (1987); State v. Truglia, 97 N.J. 513 (1984), and State v. Mirault, 92 N.J. 492 (1983).
Moreover, the New Jersey Legislature's entry into the field of merger in enacting the Code of Criminal Justice, N.J.S.A. 2C:1-1 et seq., clearly impacts on the Mills decision. N.J.S.A. 2C:1-8a provides:
a. Prosecution for multiple offenses; limitation on convictions. When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
(1) One offense is included in the other, as defined in subsection d. of this section;
(2) One offense consists only of a conspiracy or other form of preparation to commit the other;
(3) Inconsistent findings of fact are required to establish the commission of the offenses; or

*415 (4) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct....
A determination barring multiple convictions shall be made by the court after verdict or finding of guilt.
In Mirault, supra, the Court noted that while older cases had relied on the "same evidence" or "same transaction" test, since Davis, supra, a new approach has been taken. Id., at 501-503. Merger questions are now analyzed under one of two tests: the Blockburger test (Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)), and the Davis test. See, e.g., State v. Truglia, supra, 97 N.J. at 520-522. Under the Blockburger analysis, there is no merger if each offense requires proof of a fact which the other does not. Truglia, 97 N.J. at 521. See N.J.S.A. 2C:1-8a. Under the more flexible Davis analysis, however, the focus is "on the episodic fragments of the events." Ibid. This latter test focuses on whether the accused's conduct can be said to constitute a single offense, in which case the other crimes charged must be merged into the principal offense. Davis, supra, 68 N.J. at 81.
Such an approach would entail an analysis of the evidence in terms of, among other things, the time and place of each purported violation; whether proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed. [Id. at 81].
This approach to the merger issue obviously requires a factual inquiry. See, e.g., State v. Miller, supra, 108 N.J. at 117-118, and State v. Bowens, 108 N.J. 622, 639 (1987). Moreover, we have recently recognized that pre-Code, merger-related cases are of limited utility in deciding such issues under the Code. State v. Clark, 227 N.J. Super. 204, 211 (App.Div. 1988) (in which we expressed doubt that State v. Pennsylvania R.R. Co., 9 N.J. 194 (1952) survived the passage of the Code, and in which we held that for purposes of a mandatory joinder rule it is "clear that in enacting the Code, the Legislature abandoned *416 the `transaction' test in favor of a test that focuses on the offense").
In State v. Lewis, 223 N.J. Super. 145 (App.Div. 1988), certif. den., 111 N.J. 584 (1988), we also recognized the changes wrought in the Mills mandate. There defendant firebombed a house which resulted in the death of a child and serious injuries to six adults. Id. at 148. He was convicted of one count of aggravated manslaughter and six counts of aggravated assault, as well as arson and burglary. Id. at 147. On appeal he claimed that "he was guilty only of the crime of aggravated manslaughter and that all of the other crimes merged with that conviction." Id. at 151. We held, without reference to Mills, that the six aggravated assaults "do not merge with aggravated manslaughter or each other because different victims were involved." Id. at 152.
The principle enunciated in Lewis is applicable here. Moreover, as we pointed out in Clark, the view that there are as many crimes committed as there are victims finds overwhelming support in other jurisdictions. 227 N.J. Super. at 211, n. 1. See also Neal v. State, 55 Cal.2d 11, 9 Cal. Rptr. 607, 612, 357 P.2d 839, 844 (1960), cert. den., 365 U.S. 823, 81 S.Ct. 708, 5 L.Ed.2d 700 (1961); State v. Rieck, 286 N.W.2d 724, 726-727 (Minn. 1979); Commonwealth v. Frisbie, 506 Pa. 461, 485 A.2d 1098, 1100-1101 (1984); State v. Irvin, 603 S.W.2d 121, 123-124 (Tenn. 1980); Lawrence v. Commonwealth, 181 Va. 582, 26 S.E.2d 54, 56-57 (1943). See also Annotation, "Single act affecting multiple victims as constituting multiple assaults or homicides," 8 A.L.R. 4th 960 (1981).
Thus, a defendant who engages in a firebombing that harms multiple victims should be exposed to multiple sentences because he knew or should have known that many individuals might be harmed by this act. Neal, supra, 9 Cal. Rptr. at 612, 357 P.2d at 844; Rieck, supra. 286 N.W.2d at 727. That rule, we find, is also consistent with the underlying philosophy of our Code which now requires us to "focus upon the gravity of the *417 offense and not the blameworthiness of the offender". See State v. Roth, 95 N.J. 334, 355 (1984).

III.
Defendant's final contention is that the trial judge erred in imposing an aggregate sentence of thirty years with fifteen years of parole ineligibility because it violated the consecutive sentence guidelines set forth in State v. Yarbough, 100 N.J. 627 (1985), cert. den., 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986).
The criteria for imposition of such sentences are outlined in Yarbough, at 643-644. Concededly, the crimes in this case all emanated from one act resulting in multiple deaths, and thus were not independent of each other, did not involve separate acts of violence, and were not committed at different times or places. The Yarbough guidelines would appear to require a limit here of a sentence of twenty years imprisonment. However, we agree with the trial judge that the number of victims and the nature and circumstances of the offenses (starting a fire at midnight when most people would likely be home) constituted an "extraordinary" case and clearly justified a departure from those restrictions as set forth in Yarbough, 100 N.J. at 647.
Affirmed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).