## THE STATE, DEFENDANT IN ERROR, v. SABINO MEL-LILLO, PLAINTIFF IN ERROR.

Argued November 17, 1908—Decided November 27, 1908.

1. Although the notion expressed by "preconceived" is not so exactly the equivalent of "premeditated" as to render the former a satisfactory substitute for the latter in a definition of the statutory crime of murder in the first degree, the context in which it occurs in a given case may be such that the employment of "preconceived" for "premeditated" in a charge to the jury, although not to be approved, is not an error by which the defendant was injured.

2. Although the statement in a charge that "murder in the second degree is devoid of the element of the intention to kill" is erroneous, it is not an error that should lead to reversal if its legal effect, in view of other parts of the charge, was injurious only to the state.

3. The victim of an unprovoked assault may protect himself even to the extent of taking the life of his assailant when that act is or reasonably appears to him to be necessary in order to preserve his own life or to save his body from serious harm. Hence a judicial charge that limits such right to what is necessary, and thereby deprives the defendant of the right to have his act tested by the reasonableness of his belief in the existence of such necessity, is erroneous; but such error is not injurious to the defendant when his sole defence is that an unprovoked and murderous assault was made upon him, and there are no grounds or circumstances going to the reasonableness of the defendant's belief apart from the grounds and circumstances that go to prove the actual existence of the danger and necessity that confronted him if his testimony be believed.

On error to the Hudson Oyer.

For the plaintiff in error, *Joseph M. Noonan.*

For the defendant in error, *Pierre P. Garven,* prosecutor of the pleas.

The opinion of the court was delivered by

GARRISON, J.   The plaintiff in error was convicted, in the Hudson County Court of Oyer and Terminer, of murder in the first degree.   The judgment now brought up by this writ of error is attacked upon three grounds, all of which relate to the charge of the trial court.

The first ground of error assigned is that the jury was instructed that "murder in the first degree is where death results from a deliberate, willful purpose to take life; a deliberate intention preconceived beforehand to kill and that intention executed and carried out."

The charge of the trial court upon the question of murder in the first degree from which the foregoing is excerpted was as follows:   "The statute concerning murder in this state, which is applicable to this inquiry, reads as follows:

" 'Murder which shall be perpetrated by means of poisoning or lying in wait or by any other kind of willful, deliberate and premeditated killing shall be murder in the first degree, and all other kinds of murder shall be murder in the second degree;   and the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty, so designate by their verdict whether it be murder in the first degree or murder in the second degree.'

"You will, therefore, observe that in order to constitute murder in the first degree the killing must be done willfully, with deliberation and with premeditation.   The statute says the killing must be willful, deliberate and premeditated to constitute murder in the first degree, but the statute does not say that such willfulness, such deliberation and such premeditation shall have existed for any fixed length of time before the act;   and therefore all the jury need be satisfied of in order

to return a verdict of murder in the first degree, is that the killing was willful, that it was deliberate, and that it was premeditated, and that such were the conditions of the mind of the accused for a time sufficiently long before the act of killing to allow him to have fully and clearly conceived the design to kill, and that he did conceive such design and then premeditately and deliberately and willfully carry out that design. It must consist of time sufficiently long for him to have formed the design to kill or not to kill and to make a choice whether he would kill or not kill, and having deliberately determined to kill to have executed that purpose. That satisfies the statute.

"The law, as I have read to you, states that you shall return by your verdict, if you find the defendant guilty of murder, whether it shall be murder of the first degree or murder of the second degree.

"Murder in the first degree is where death results from a deliberate, willful purpose to take life; a deliberate intention preconceived beforehand to kill and that intention executed and carried out."

From this judicial exposition which is not otherwise excepted to the concluding clause or rather the word "preconceived" is singled out and made the basis of the argument that the notion expressed by "preconceived" is not the exact equivalent of "premeditated," which is the word used in our statute defining murder in the first degree.

Whether this is so or not, or whether the clause in question standing apart from its context would be in all respects a satisfactory definition of murder in the first degree, need not now be decided. It may be, that inasmuch as premeditation as a mental process covers a less extensive field than that covered by "preconception," the broader term would not in an isolated definition of murder in the first degree be a satisfactory substitute for the narrower one used in the statute. That, however, is not the case here. Six times in a single paragraph quoted from the charge the jury had been told that premeditation was an indispensable element of murder in the first degree. When, therefore, referring to what had just gone

before, the broader term "preconceived" was employed, the jury must have understood that what was meant was that sort of preconception which they had just before and so repeatedly been told was a requisite element of the statutory crime of murder in the first degree, namely, "premeditation." While, therefore, we find in this assignment some ground for verbal criticism, we find none for reversal.

The second assignment challenges the accuracy of the statement of the charge that "murder in the second degree is devoid of the element of the intention to kill." That this statement is erroneous is apparent from the consideration that the statute touching the degrees of murder after specifying the attributes constituting murder in the first degree relegates all other kinds of murder to the second degree of that crime. Hence, inasmuch as murder perpetrated with an intention to kill that was not deliberate and premeditated, is a kind of murder, and yet is not murder in the first degree, it follows necessarily from the statutory category that it must be murder in the second degree. This has already been sufficiently pointed out in this court in the cases of *State* v. *Bonofiglio,* 38 *Vroom* 239, and *State* v. *Deliso,* 46 *Id.* 808.

In the present case, however, in view of other parts of the charge the effect of this judicial error was injurious only to the state; for the jury had been told that the only verdict it would be justified in finding against the defendant was that of murder in the first or in the second degree, they had also been told that unless they found a killing that was deliberate and premeditated they could not convict the defendant of murder in the first degree; when, therefore, they were further told that murder in the second degree was devoid of the element of the intention to kill they were in effect told that it would be their duty to acquit the defendant unless his criminal act of killing in addition to being intentional was also deliberate and premeditated. This, of course, was too favorable to the defendant, but the jury having found that the defendant's act was deliberate and premeditated, neither the state nor the defendant was injured by the erroneous statement of the law.

The third and last assignment of error to be considered relates to the charge of the court touching the law of self-defence. What the court said was this:

"Every man has a right to defend himself when he is attacked. He has a right to defend himself to any extent that is necessary to protect his person and his life. If a person who is attacked has reasonable grounds for believing that his life is in danger or his body is in great danger of being harmed, he has a right to defend himself to any extent that is necessary, even in some cases to taking life, but there must be some reasonable ground for his belief, and if he pursues this defence, defending himself beyond what is necessary to protect himself, then he loses the right of self-defence, and is himself the aggressor and is responsible for any results that may result from such aggression.

"It is not the law that a man can make himself the judge of his own situation; whether he was in danger or had reasonable ground for believing that he was, is a matter for you to determine; whether the circumstances were such as to satisfy you that he was in danger, or had a right to think himself so, and whether he was, under the circumstances shown, justified in using the force that he did use, and if he had the right to use force, was this force that he used necessary to protect himself."

This instruction viewed as a comprehensive definition is faulty in two respects. First, in that it extends the right to take life to cases in which the defendant's apprehension is that he may be harmed, whereas such right is limited to apprehension of serious harm. This error was prejudicial, however, only to the state.

The other respect in which the instruction is incorrect is that it draws a distinction between the existence of the right of self-defence and the extent to which such right may lawfully be pursued, saying of the former that it exists whenever the defendant has reasonable grounds for believing that his life or body are endangered and of the latter that if a man "defend himself beyond what is necessary to protect himself he loses the right of self-defence." If the word "necessary"

in the language last quoted be qualified as it was in the pre-
ceding clause by the words "or reasonably appears to him to
be so," the error complained of would be cured.   Abstractly
considered, however, the instruction in so far as it limited the
extent of the right of self-protection to what was actually nec-
essary was an erroneous statement of the law.   The correct
rule is that stated by Chief Justice Gummere in *State* v.
*Bonofiglio,* 38 *Vroom* 239, 245, in which the existence of the
right to defend oneself and the extent to which it may go are
each made to depend upon what actually is or what reasonably
appears to be the necessity.   "A man," he says, "may protect
himself, even to the extent of taking the life of his adversary
when that act is or reasonably appears to be necessary in order
to preserve his own life or to protect himself from serious
bodily harm."   Under the rule thus laid down the jury is to
test the defendant's justification, not only in the light of the
actual situation as it is disclosed upon the trial but also in the
light of what the situation may reasonably have appeared to
be to the defendant.

   The court's instruction, therefore, as a general definition of
the right of self-defence, was erroneous; whether it was injuri-
ous to the defendant in this particular case is another question.
From the nature of the error in the court's definition it is clear
that such error would be injurious to the defendant in any
case in which the right of self-defence set up by the testimony
was in the alternative, so that such right would be of equal
avail to the defendant whether the danger and necessity upon
which he relied for his justification were actually established
to the satisfaction of the jury or whether they were found by
the jury to have been reasonably apprehended by the defendant
although not really existent in point of fact.   It is, however,
equally clear that the omission of such latter instruction
would be harmless to the defendant where the case made by
him was not susceptible of being submitted to the jury in the
alternative under the proofs.   For the right of the defendant
to have his defence thus submitted to the jury depends wholly
upon the state of the testimony, and hence arises only when
the testimony is of such a character that if the existence of the

actual danger or necessity testified to by the defendant be found against him, there still remains some aspect of the case made by the proofs that would warrant the submission to the jury of the further question whether the defendant's conduct might not be justified by the reasonableness of his apprehensions even though the danger or necessity set up by his proofs did not in fact exist. We are speaking now of cases like the present in which the defendant's act of homicide, if the facts to which he testified be believed, was clearly justified.

There are, of course, cases of trifling assaults where the primary and indeed the only question is whether a reasonable apprehension of danger was justified, but where as in the case now before us the assault upon the defendant if made was made with a deadly weapon, accompanied by threats against the defendant's life, the primary question for the jury is whether such murderous assault took place, and this fact being resolved adversely to the defendant, there is no residuum of testimony or circumstance to support a belief alien to such fact, and hence no occasion for the submission to the jury of the reasonableness of the defendant's belief in the imminence of his danger notwithstanding that the situation described by him did not in fact exist.

In fine, where there are no grounds or circumstances going to the reasonableness of the defendant's belief, apart from the grounds and circumstances that go to prove the actual existence of the danger or necessity that confronted the defendant, if his testimony be believed, the failure to submit to the jury the reasonableness of the defendant's belief is not an error by which he was injured.

This was the *ratio decidendi* of the case of *State* v. *Jones,* 42 *Vroom* 543, recently in this court. In delivering the opinion in that case the Chief Justice said: "The case that was before them (the jury) did not present for their determination the question of the right of a man to take life under circumstances where it was seemingly but not actually necessary to do so to preserve his own life or to save himself from grave bodily harm. If the story told by the defendant was true the necessity of doing what he did for his own protection

was absolutely beyond question, and it was with this story that the trial judge was dealing in this part of his instruction to the jury and not with a mere abstraction.   He was charging the law of the case."

That the present case is of this sort will appear from a brief recital of the cases made respectively by the state and by the defendant.   The state's case was that the defendant remained at the window of a barroom, looking out through an opening in the curtains, until Pellechio passed along in front of the window when the defendant exclaimed, "Here he comes," and started after him, "sneaking up" behind him until close enough to strike him in the back of the head with an axe that he carried concealed in a paper covering.   Pellechio's skull was fractured by a blow from behind.   The defendant's version of the same affair was that Pellechio met him in the street and instantly and without provocation assaulted him, and, with threats against his life, seized him by the throat and forced him to the ground so that he dropped the axe he was carrying, and that as he was about to pick up his axe he saw Pellechio with his hand on his revolver "going for" him. His testimony was, "He was going to get me;" "He was going to shoot me;" "He was so mad he was going to shoot me." At this precise juncture, according to the defendant's testimony, he recovered his axe and struck Pellechio with it.   Two utterly irreconcilable versions were thus presented to the jury for its determination, according to one of which the defendant had made an unprovoked and murderous assault upon Pellechio, according to the other of which Pellechio had made an unprovoked and murderous attack upon the defendant.   Both could not be true, and the verdict shows conclusively which the jury accepted and which they rejected, but neither version presented any circumstance that was at once consistent with the non-existence of the necessity testified to by the defendant, and yet afforded a reasonable basis for his belief therein.   The existence and the imminence of the defendant's danger having been left to the jury as one not only of fact but also as one that the defendant may have had reasonable grounds for believing the succeeding statement, which is the one now chal-

lenged, though abstractly erroneous was not in a legal sense injurious to the defendant.

If instead of the direct conflict between the two versions of the affair the state's contention had been that the defendant had magnified his danger, that Pellechio's revolver was not loaded, or that it was a toy pistol, or that he was handling it only in sport or any other circumstance that raised the question whether the situation was really as the defendant had testified, or only seemed to him to be so, the defendant would have been entitled to have the jury charged that even though they found against him on the actual necessity of the defence he had made they should still find for him if they believed that such necessity although non-existent in fact had reasonably appeared to him to be real. No such circumstances, however, appearing in the testimony, no such charge was required from the court. The charge as made covered correctly the matters to be submitted to the jury under the proofs; the charge, in so far as it was incorrect, touched a matter that could not under the proofs have been submitted to the jury, hence an error therein did not injure the defendant, and should not lead to the reversal of the judgment entered against him in the court below.

Finding in the charge of the trial judge no error that requires reversal the judgment brought up by this writ of error is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, BERGEN, VOORHEES, BOGERT, VREDENBURGH, GRAY, DILL, J.J. 12.

*For reversal*—PARKER, MINTURN, VROOM, **J.J.** 3.